IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KRISTOPHER GENE GUILLAUME, ET AL., | § § § | |
| Plaintiffs, | § § | |
| V. | § § | No. 3:24-cv-820-S-BN |
| EKRE OF TX, LLC, | § § § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiffs Kristopher Gene Guillaume, Sylvia Jean Guillaume, and Eugene Devoe filed this action in a Dallas County, Texas state court *pro se*, alleging violations of Texas law related to a sale-leaseback agreement with Defendant EKRE of TX, LLC ("EKRE"), pursuant to which they sold their house to EKRE and stayed in the house as tenants, and EKRE removed Plaintiffs' lawsuit under 28 U.S.C. §§ 1332(a) and 1441, based on federal diversity subject-matter jurisdiction. *See* Dkt. No. 1.

The presiding United States district judge referred the removed action to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference.

EKRE moved to compel arbitration. *See* Dkt. No. 52; *see also* Dkt. No. 51.

A response and reply were filed. *See* Dkt. Nos. 56-58.

And the undersigned enters these findings of fact, conclusions of law, and recommendation that the Court should grant the motion to compel, terminate Plaintiffs' pending motions, retain the case, refer it to arbitration, and

administratively close it pending the outcome of arbitration.

## Legal Standards

"[A]rbitration is a matter of contract," so "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960).

And the Federal Arbitration Act ("FAA") provides that a written agreement to arbitrate in a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

So a party may bring a motion to compel arbitration under the FAA, and a court must direct parties to arbitration if it is "satisfied that the making of the agreement for arbitration ... is not in issue." *Id.* § 4.

And, under the "two-step process" to "analyze whether a party can be compelled to arbitrate," courts must ask first whether "'the party has agreed to arbitrate the dispute.'" *Janvey v. Alguire*, 847 F.3d 231, 240 (5th Cir. 2017) (per curiam) (quoting *Sherer v. Green Tree Serv. L.L.C.*, 548 F.3d 379, 381 (5th Cir. 2008)); *see also Cigniti Techs. Inc. v. Govinsadamy*, No. 3:23-cv-2460-L, 2024 WL 4329021, at *2 (N.D. Tex. Aug. 7, 2024) ("When determining a motion to compel arbitration, '[e]nforcement of an arbitration agreement involves two analytical steps. The first is contract formation – whether the parties entered into any arbitration agreement at all.'" (quoting *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016))), *rec. accepted*, 2024 WL 4360144 (N.D. Tex. Sept. 30, 2024).

And, so, "the only issue at the first step is whether there is any agreement to arbitrate any set of claims. Determining whether that agreement covers the claim at bar is the second step." *Kubala*, 830 F.3d at 202.

"When deciding whether the parties agreed to arbitrate the dispute in question, courts generally ... should apply ordinary state-law principles that govern the formation of contracts." *Polyflow, L.L.C. v. Specialty RTP, L.L.C.*, 993 F.3d 295, 302-03 (5th Cir. 2021).

And, while courts have often held that they "do so against the backdrop of a strong presumption in favor of arbitration," *Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 279 (5th Cir. 2019) (footnote omitted), despite the "frequent use of that phrase," "the FAA's 'policy favoring arbitration' … is to make 'arbitration agreements as enforceable as other contracts, but not more so,'" *Morgan v. Sundance*, 596 U.S. 411, 418 (2002) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, n.12 (1967)).

"Accordingly, arbitration provisions within a contract are on equal footing with other provisions and obtain no talismanic effect from the FAA." *Twn. of Vinson v. Certain Underwriters at Lloyds London*, 706 F. Supp. 3d 602, 608 (W.D. La. 2023). That is, *Morgan* "clipped the wings of the oft quoted 'strong federal policy favoring arbitration' created by the FAA, explaining that the FAA's policy only makes arbitration agreements as enforceable as other contracts, but not more so, and does not permit federal courts to devise novel rules to favor arbitration over litigation." *Id.*

But, even prior to *Morgan*'s clarification, any policy favoring arbitration did

"not apply to the initial determination whether there is a valid agreement to arbitrate." *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004).

And, while "[o]rdinarily both steps are questions for the court," "where the arbitration agreement contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the analysis changes." *Kubala*, 830 F.3d at 201 (cleaned up).

That is, "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy," and "[a]n agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69, 70 (2010) (cleaned up).

"Delegation clauses are enforceable and transfer the court's power to decide arbitrability questions to the arbitrator. Thus, a valid delegation clause requires the court to refer a claim to arbitration to allow the arbitrator to decide gateway arbitrability issues." *Kubala*, 830 F.3d at 202.

And, so, "[i]f a party opposing arbitration contests the validity of the contract, that goes to the arbitrator; if the party contests the existence of a contract, it stays with" the court. *Lopez v. Cintas Corp.*, 47 F.4th 428, 433 (5th Cir. 2022).

Under this framework, "if the party seeking arbitration points to a purported delegation clause, the court's analysis is limited. It performs the first step – an

analysis of contract formation – as it always does." *Kubala*, 830 F.3d at 202 (cleaned up). That is, "[a]s always, [the court] ask[s] if the parties entered into a valid agreement." *Archer*, 935 F.3d at 279.

"If they did," the court must "turn to the delegation clause," and "the only question, after finding that there is in fact a valid agreement, is whether the purported delegation clause is in fact a delegation clause – that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated." *Archer*, 935 F.3d at 279 (cleaned up); *Kubala*, 830 F.3d at 202 (cleaned up). "When determining that intent, [c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so." *Archer*, 935 F.3d at 279 (cleaned up).

"If there is a valid delegation, the court must grant the motion to compel," *id.* (cleaned up), because "the arbitrator decides whether the claim is arbitrable," *Matter of Willis*, 944 F.3d 577, 579-80 (5th Cir. 2019) (cleaned up); *accord Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) ("To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists. *See* 9 U.S.C. § 2. But if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue.").

But, if the agreement does not contain a valid delegation clause, and the court therefore has "the power to decide arbitrability," the court "must perform the ordinary arbitrability analysis" and address the scope of the arbitration agreement and

whether the claim or claims are covered. *Archer*, 935 F.3d at 282; *Kubala*, 830 F.3d at 203.

And, then, "[i]f the court finds that the parties agreed to arbitrate, the court typically must consider whether any federal statute or policy renders the claims nonarbitrable." *Polyflow*, 993 F.3d at 302 (cleaned up).

## Analysis

The sales-leaseback agreement, signed by Plaintiffs, *see* Dkt. No. 52-1 at 79, includes an arbitration provision, *see id.* at 75-77 (¶ 31), mandating that "any and all claims … between [Plaintiffs] and [EKRE] shall be resolved in binding arbitration rather than in court, … except that [Plaintiffs] and [EKRE] agree that binding arbitration will not apply to a Party seeking a preliminary injunction, restraining order or other provisional equitable relief in any court whereby such Party may suffer immediate and irreparable harm for which money damages may be inadequate and impossible to calculate"; that "[t]he arbitrator shall also decide what is subject to arbitration unless prohibited by law"; and that "[a]ny arbitration will be administered by the American Arbitration Association ('AAA') pursuant to its then current Commercial Arbitration Rules (the 'AAA Rules'), as modified by the terms" of the parties' agreement.

The agreement also permitted Plaintiffs to opt out of the arbitration provisions by sending timely notice to EKRE. *See id.* But Plaintiffs did not do so. *See id.* at 15-16 (¶ 51).

To determine arbitrability under the applicable framework, the Court must first


decide if there is a valid agreement. *See Kubala*, 830 F.3d at 201.

And "the initial question of whether there is a valid agreement to arbitrate usually concerns matters of contract formation." *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 237 (5th Cir. 2013) (citation omitted).

> In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. To achieve this objective, we must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument. A contract is unambiguous if it can be given a definite or certain legal meaning. On the other hand, if the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous, creating a fact issue on the parties' intent.

*J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003) (citations omitted).

Under this authority, there is no substantive argument that the parties' agreement containing the arbitration provision is not valid.

And, to the extent that Plaintiffs urge that the agreement is not valid (or illegal) because EKRE induced the contract fraudulently, they offer nothing to support this broad assertion, and such an argument is not aimed specifically at the arbitration provision, and, so, as EKRE persuasively summarizes it, that argument is "beside the point." Dkt. No. 58 at 4; *see Prima Paint*, 388 U.S. at 403-04 ("[I]f the claim is fraud in the inducement of the arbitration clause itself – an issue which goes to the 'making' of the agreement to arbitrate – the federal court may proceed to adjudicate it. But the [FAA] does not permit the federal court to consider claims of fraud in the inducement of the contract generally." (footnote omitted)).

In sum, there is a valid agreement to arbitrate.

The undersigned will next address the argument that EKRE waived its right to arbitrate by first pursuing a forcible detainer action in a Dallas County justice court.

Following *Morgan*, "the surviving test for waiver in this circuit is the remainder of [the] Fifth Circuit's prior test: whether the party has substantially invoked the judicial process." *Vollmering v. Assaggio Honolulu, LLC*, No. 2:22-CV-00002, 2022 WL 6246881, at *12 (S.D. Tex. Sept. 17, 2022) (citations omitted), *rec. adopted*, 2022 WL 6250679 (S.D. Tex. Oct. 6, 2022); *see also Barnett v. Am. Exp. Nat'l Bank*, No. 3:20-CV-623-HTW-LGI, 2024 WL 3305999, at *5 (S.D. Miss. July 3, 2024) ("*Morgan* resolved the circuit split when it decided that prejudice is not a requirement for waiver. This Court, then, must determine only whether American Express substantially invoked the judicial process." (emphasis omitted)).

"For waiver purposes, a party only invokes the judicial process to the extent it litigates a specific claim it subsequently seeks to arbitrate." *Forby v. One Techs., L.P.*, 13 F.4th 460, 465 (5th Cir. 2021) (cleaned up).

For example – also applicable to this case – a defendant's initiating eviction actions in state court "did not constitute 'protracted' litigation, which could result in a waiver of its right to arbitrate" where that defendant "persuasively argue[d] that '[t]here is no conceivable policy justification for a rule that, by exercising the reasonable business judgment to sue to evict someone from leased premises or to collect a debt of less than $10,000, a party waives for all time its right to arbitrate

every other dispute imaginable.'" *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 132 (2d Cir. 1997) (citation omitted) (cited at *Forby*, 13 F.4th 465 n.9).

And, more applicable here,

> the FAA does not require parties to arbitrate when they have not agreed to do so, nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement. It simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms.

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) (citations omitted).

The Court should therefore not find waiver where the terms of the parties' agreement to arbitrate specifically carves out from mandatory binding arbitration the provisional equitable relief that EKRE sought.

So, because there is a valid agreement to arbitrate and EKRE did not waive its right to arbitrate, the undersigned next considers whether the agreement includes a valid delegation clause.

"Under the FAA, parties are free to delegate questions to an arbitrator, including questions regarding the validity and scope of the arbitration provision itself. However, courts may not assume that parties have agreed to arbitrate threshold questions absent clear and unmistakable evidence of their intent to do so." *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 551-52 (5th Cir. 2018) (internal citations omitted).

"If there is a valid delegation, the court must grant the motion to compel," *Archer*, 935 F.3d at 279 (cleaned up), because "the arbitrator decides whether the claim is arbitrable," *Willis*, 944 F.3d at 579-80 (cleaned up).

Here, the sale-leaseback agreement underlying this dispute includes an arbitration clause covering all claims between the parties (subject to the carve out discussed above) and incorporates the AAA Rules. *See* Dkt. No. 52-1 at 75-77 (¶ 31).

And, "generally, stipulating that the AAA Rules will govern the arbitration of disputes constitutes such 'clear and unmistakable' evidence…" the parties intended to arbitrate threshold questions. *Arnold*, 890 F.3d at 552.

And, so, because there is a valid agreement to arbitrate and a valid delegation clause, and because EKRE did not waive its right to arbitrate, the Court should grant EKRE's motion to compel arbitration and elect to retain this case and administratively close it pending the outcome of arbitration. *See, e.g.*, *Psara Energy, Ltd. v. Advantage Arrow Shipping, L.L.C.*, 946 F.3d 803, 807-08 (5th Cir. 2020).

**Recommendation**

The Court should grant Defendant EKRE of TX, LLC's motion to compel arbitration [Dkt. No. 52] and terminate Plaintiffs' pending motions, retain the case, refer it to arbitration, and administratively close it pending the outcome of arbitration.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and

specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: November 8, 2024

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE